IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02636-RBJ

HR BRIARGATE, LLC, a Delaware limited liability company,

Plaintiff,

v.

COLORADO SPRINGS ORTHOPEDIC GROUP,

Defendant.

ORDER

This case concerns whether the Colorado Springs Orthopedic Group ("CSOG") has

satisfied its obligations under an agreement to guarantee the payment of rent by the Julie Penrose

Health Education and Research Center.  CSOG claims that it has fully done so.  The lessor, HR

Briargate ("HRB"), claims that it has not, and that it is still owed $206,475.11.  Both parties

represent that there are no genuine disputes of material fact, and that the Court should resolve the

matter on their cross-motions for summary judgment.  For the reasons set forth herein, the Court

agrees with HRB and enters summary judgment in its favor.

**FACTS**

On May 14, 2008, a lease agreement was executed between NorthCare at St. Francis,

LLC ("NorthCare") and the Julie Penrose Health Education and Research Center (the "Julie

Penrose Center") to commence on January 1, 2009 for a term of ten years.  At the time,

NorthCare was the owner of the building and landlord on the lease, and the Julie Penrose Center

was the tenant.  The lease was guaranteed by CSOG for up to $250,000 in rent and additional

1

rent (collectively, the "rent").  The Guaranty also provides for payment of interest, costs,

expenses, and attorneys' fees without limit.[1]  According to CSOG, it only agreed to sign the

Guaranty because Ashley Wiechmann, the Chief Executive Officer of CSOG from January 2000

to March 31, 2011, assured the group that they would never have to pay on it.  [Docket #44-2 at

7].

In addition to serving as CEO, from at least May 14, 2008 until March 31, 2011, Mr.

Wiechmann served on the Board of the Julie Penrose Center.  During this same period, Kirk Blad

served as Operations Manager for CSOG as well as the Advisor for Center Facilities and

Infrastructure for the Julie Penrose Center.

From the inception of the Julie Penrose Center, CSOG paid the Center's rent, security

deposit, the salaries of its employees, and other expenses.  [Docket #44-2 at 6, #44-4 at 10–13,

#33-8 at 1].  The Center's employees were not only put on CSOG's payroll, but they were also

categorized as CSOG employees and put on CSOG's profit-sharing plan.  [Docket #44-2 at 6].

On April 14, 2009, a property manager for NorthCare sent an email to Mr. Blad asking

about the status of the Julie Penrose Center's rent payments for March and April.  [Docket #33-

3].  A follow up email was sent on April 27, 2009 asking Mr. Blad to make sure the payments

were processed that week.  [Docket #33-4 at 2].  On May 1, 2009, Mr. Blad emailed that he had

the rent check for March and April.  [Docket #33-5 at 1].

On June 12, 2009, a different property manager sent an email to Mr. Wiechmann and Mr.

Blad stating that May and June rent had not yet been received, and that they would have to make

---

[1] The Guaranty provides, in relevant part: "The payments to be made under this Guaranty shall commence when the following occurs: NorthCare gives Guarantor written notice of a failure of [the Julie Penrose Center] to make timely payments of rent or additional rent per the Lease.  NorthCare shall give Guarantor written notice of any such failure of the tenant to timely pay rent or additional rent, and Guarantor will, without any further notice, then pay that and subsequent monthly rent in the amount stated in such notice until NorthCare gives notice that the tenant has recommenced paying rent."  [Docket #33-1 at 2]

their payment in full by 4:00 p.m. on June 22, 2009. [Docket #33-6 at 1]. The email continues, "If we do not receive payment by the date and time mentioned above, we will have no choice but to notify the guarantor on the Lease, Colorado Springs Orthopedic Group that we have not received payment for May and June and proceed from there." [Docket #33-6 at 1]. Mr. Blad emailed Mr. Wiechmann within twenty minutes asking "What do you want me to do? I can get a check processed today . . . . Do we want to pay both months now?" [Docket #33-6 at 1]. Mr. Weichmann responded, "Yes. Rent fir [*sic*] may and June." [Docket #33-6 at 1]. Mr. Blad immediately cut a check for May and June rent. [Docket #33-7].

On November 21, 2010, Mr. Wiechmann signed a tenant estoppel certificate regarding the Julie Penrose Center's lease. [Docket #44-1 at 18–20]. This certificate certified that "no default or event that, with the passage of time or notice, would constitute a default . . . on the part of Tenant exists under the Lease in the performance of the terms, covenants, and conditions of the Lease required to be performed on the part of the Tenant." [Docket #44-1 at 18–19, ¶ 9]. The certificate was signed by Mr. Wiechmann in his capacity as Treasurer of the Julie Penrose Center. [Docket #44-1 at 19].

In December 2010, HRB purchased the NorthCare building from NorthCare and assumed all of its leases, including the lease for the Julie Penrose Center. In 2011 the Julie Penrose Center was late and irregular in its rent payments. HRB began to make formal demands for rent, and, in August 2011, HRB served an eviction demand on the Julie Penrose Center and formally put CSOG on notice under the Guaranty. At that time, CSOG asserted that it had already made $206,475.11 in rent payments under the Guaranty. On March 7, 2012, CSOG made a one-time payment to HRB in the amount of $43,524.89. Through this payment, CSOG asserts, it met its full $250,000 obligation under the Guaranty.

The lease space vacated by the Julie Penrose Center has remained unoccupied despite diligent efforts by HRB to re-let the premises.  Rent in excess of $350,000 remains unpaid, as well as interest, costs, expenses, and attorneys' fees owed under the lease.  CSOG has stipulated that the $250,000 rent cap is not applicable to the amount it owes for interest, costs, expenses, and attorneys' fees.  [Docket #48 at n.1].

On July 26, 2012, CSOG filed a lawsuit in this district (No. 12CV1948-PAB-MEH) against Mr. Wiechmann, by then its former CEO.  [Docket #44-7 in the present case].  The complaint alleged, among other things, that beginning in January 2009 Mr. Wiechmann made payments on behalf of the Julie Penrose Center—including rent—using CSOG funds.  *Id.* at 2, ¶ 43.  The complaint further alleges that "CSOG reasonably expected that all sums paid to or on behalf of the Julie Penrose Center by [Mr. Wiechmann] would be repaid to CSOG."  *Id.* at 2, ¶ 44.  CSOG instructed Mr. Wiechmann to stop making payments to or on behalf of the Julie Penrose Center in July 2010 and again in December 2010.  *Id.* at 2, ¶ 46.  CSOG alleged that the payments "were not authorized by CSOG."  *Id.* at 3, ¶ 49.  Rather, according to CSOG's Initial Rule 26(a)(1) Disclosures [Docket #44-8 in the present case], the payments were a "conversion of funds belonging to CSOG that [Mr. Wiechmann] paid to the Julie Penrose Center."  *Id.* at 2, ¶ 3.  CSOG also made similar claims in its answer to Mr. Wiechmann's Interrogatory # 6 in case No. 12CV1948-PAB-MEH.  [Docket #44-9 in the present case at 2].

In that lawsuit CSOG demanded that Mr. Wiechmann return $470,305.60 he was "not authorized to pay to or on behalf of the Julie Penrose Center."  [Docket #44-7 at 3, ¶ 51; #44-8 at 2, ¶ 3].  In its interrogatory answers in that case, CSOG asserted that unauthorized payments made by Mr. Wiechmann to or on behalf of the Julie Penrose Center included the rent payments.

4

[Docket #44-9 at 2, answer to Interrogatory 6].  The suit was ultimately settled for an undisclosed amount.

**STANDARD OF REVIEW**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ."  *Id.*  The Court does not weigh the evidence or make credibility determinations.  *Id.*  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**ANALYSIS**

**I.  CSOG'S MOTION FOR SUMMARY JUDGMENT.**

CSOG essentially argues that in order to obtain summary judgment in its favor it must prove that the Guaranty's section on written notice (1) imposes a covenant, and not a condition precedent, to CSOG's payment obligation under the Guaranty; or (2) if it is a condition precedent, NorthCare provided CSOG with written notice of the Julie Penrose Center's failure to make timely payments of rent, and CSOG then made those payments under the Guaranty.

[Docket #33]  HRB, in response, argues that "CSOG's statement of the issues is incorrect, and its arguments are an extended diversion from the real issues."  [Docket #45 at 3].  Instead, HRB contends that the burden falls on CSOG "to demonstrate that its damages should be reduced on account of Wiechmann's payments to HRB's predecessors, NorthCare . . . ."  [Docket #45 at 3].

This Court agrees with HRB.  This case presents a unique situation where, instead of an action to enforce payment under a Guaranty, the guarantor is alleging it has already paid the amount owed.  The issue in this case is whether payments made by Mr. Wiechmann from CSOG's account were voluntarily-made rent payments or, instead, payments made as obligations under the Guaranty.  The issue is not whether the Guaranty itself required payment under it or what triggered that payment scheme.  CSOB has essentially erected a "straw man," and knocking it down will not resolve the underlying issue.

## II.  HRB'S CROSS-MOTION FOR SUMMARY JUDGMENT.

HRB contends that the question raised is whether CSOG's guaranty obligation to HRB should be reduced by the $206,475.11 that was paid between 2008 and 2010 to HRB's predecessor, NorthCare, on behalf of the Julie Penrose Center.  [Docket #46].  HRB asserts that the $206,475.11 constituted voluntary rent payments, not guarantor payments.  CSOG contends the opposite.

Normally, a question of the parties' understanding and intent is inappropriate for resolution on summary judgment.  *See e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982); *Decibel Credit Union v. Pueblo Bank & Trust Co.*, 996 P.2d 784 (Colo. Ct. App. 2000) (citations omitted).  However, in some cases the facts on the record effectively prove the parties' subjective intent.  In those rare cases, the Court may resolve the issue in a motion for summary judgment.  This case is one of those exceptions.

### A. Judicial Admissions.

HRB relies heavily on positions that CSOG took in case No. 12CV1948-PAB-MEH that are inconsistent with the position CSOG is now taking in the present case. HRB attaches the label "judicial admissions" to these positions. I am not convinced that the label fits.

"Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (citing *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986) (en banc)). "Judicial admissions . . . have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 716 (10th Cir. 1993) (internal quotation marks and citations omitted).

Admissions in the pleadings of a case constitute judicial admissions. 6 Handbook of Fed. Evid. § 801:26 (7th ed.). However, judicial admissions in a separate case are considered ordinary admissions. *Id.* Ordinary admissions may be controverted or explained by the party against whom they are being used. *Id.*

While CSOG made certain judicial admissions through its pleadings in case No. 12CV1948-PAB-MEH, those pleadings are considered ordinary admissions in the present case. Given the settled law on this matter, to the extent that HRB's argument relies upon the judicial admission doctrine, I reject it.

### B. Ordinary Admissions.

CSOG does not deny that it took the position in the earlier case that Mr. Wiechmann's payments were unauthorized. It denies that this was a "judicial admission, but seems comfortable enough with the label "ordinary admissions," perhaps because the case it cites holds

that "ordinary admissions" are not conclusive. [Docket #48 at 10–11]. The label doesn't make a great deal of difference to me. What does matter, in my view, is that CSOG took positions in Judge Brimmer's case that benefitted its damages suit against Mr. Wiechmann, but it has turned around and taken positions in the present case that are plainly inconsistent with what it essentially represented to Judge Brimmer because the new positions seem to benefit CSOG in this case. If that doesn't trouble CSOG and its counsel, it does trouble me.

    1. <u>The Admission</u>.

Basically, CSOG's position in the other case was that the payments that Mr. Wiechmann made on behalf of the Julie Penrose Center were rent payments. Having concluded that battle, CSOG now contends that the payments were not unauthorized rent payments after all. Rather, they were payments made to discharge CSOG's obligation under the Guaranty, its agreement to step in and pay the landlord if the Center defaulted and did not make its rent payments.

In attempting to escape the problem that this inconsistency creates, CSOG argues that Mr. Wiechmann received notice that the Julie Penrose Center had failed to pay rent, such that his subsequent payment from the CSOG bank account must have constituted payment from the guarantor to satisfy the Guaranty. I am not persuaded.

First, the tenant estoppel certificate signed by Mr. Wiechmann, who was among other things the Treasurer of the Julie Penrose Center, represented that the Center was current on its rent. But that representation could not reasonably have been made if the Center had defaulted and the Guaranty had been activated.

Second, in attempting to distance itself from the tenant estoppel certificate CSOG argues that it cannot be bound by the certificate because Mr. Wiechmann signed it as Treasurer of the Julie Penrose Center. Yet, by the same token, when Mr. Wiechmann delivered rent checks to

NorthCare, nothing indicates that he was doing so as an agent of CSOG to satisfy the guaranty obligation.

Third, CSOG paid all of the Julie Penrose Center's expenses since the Center's inception, including its security deposit and employee salaries. The fact that the payments now in controversy were made from CSOG's bank account surely does not prove that the payments were made on behalf of CSOG as the guarantor.

Fourth, Mr. Wiechmann's actions upon receiving the landlord's demands suggest that he was trying to avoid triggering the Guaranty. In particular, on July 12, 2009, Mr. Wiechmann immediately paid May and June 2009 rent after NorthCare threatened to notify CSOG of the default and trigger the Guaranty. He did not respond to the July 12, 2009 email by offering to make guaranty payments as a CSOG agent. Considering that CSOG has indicated that it only agreed to sign the Guaranty because Mr. Wiechmann assured the group that they would never have to pay on it, it is not surprising that Mr. Wiechmann did not want NorthCare to notify CSOG of the untimely payments.

In short, CSOG initiated a civil lawsuit against Mr. Wiechmann partly on the grounds that it never authorized him to make payments to or on behalf of the Julie Penrose Center. If these payments were made as guarantor payments, CSOG should not have alleged in the case before Judge Brimmer that they were unauthorized or illegal conversions. While an ordinary admission in the pleadings may not necessarily be conclusive in all circumstances, I find that in the circumstances here it is conclusive.

## CONCLUSION

The Court has considered the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to CSOG, and it finds that the payments did not

constitute guaranty payments.  Instead, they constituted rent payments, whether authorized or

not, made on behalf of the Julie Penrose Center.  Therefore, because its only payment on the

Guaranty to date has been the $43,524.89 paid on February 28, 2012, CSOG remains liable

under the Guaranty for $206,475.11.  CSOG is also liable for interest, costs, expenses, and

attorneys' fees, none of which are capped by the $250,000 limit.

**Order**

1.  Motion #33 is DENIED.

2.  Motion #46 is GRANTED.  Judgment shall be entered in favor of the plaintiff, HR

Briargate, LLC, and against the defendant, the Colorado Springs Orthopedic Group, in the

amount of $206,475.11 plus interest, costs, expenses and attorney's fees as provided by the

contract.  The Court directs the parties through counsel to confer and attempt to reach a

stipulation on the latter amounts to be added to the judgment.

3. The trial preparation conference set February 7, 2014 at 8:00 a.m. and the bench trial

scheduled March 10, 2014 are vacated.

DATED this 4th day of February, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge