IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02636-RBJ

HR BRIARGATE, LLC, a Delaware limited liability company,

Plaintiff,

v.

COLORADO SPRINGS ORTHOPEDIC GROUP,

Defendant.

ORDER

This matter comes before the Court in the form of a "Stipulated Petition for Interest, Costs, Expenses and Attorney Fees" [ECF No. 60] following a judgment in the plaintiff's favor [ECF No. 51]. The parties have been unable to agree as to what interest rate should apply to the judgment—though they have agreed to all other fees and costs owed—and each has filed a brief in support of their assessment of the applicable interest rate. [ECF Nos. 63, 64]. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

This case originally concerned whether defendant CSOG owed plaintiff HRB unpaid rent under the guaranty provision of a commercial lease. On cross-motions for summary judgment, the Court ruled in favor of HRB. [ECF No. 51]. The parties are here today simply because they cannot agree as to the interest rate owed on the late rent payments.

Under Section 2.4 of the Lease, rent that is not paid within five (5) days after being due "shall bear interest from the date due to the date paid at the rate of twenty-four percent (24%) per

annum or, if higher, the highest rate permitted by law." [ECF No. 44-1 at § 2.4]. The Guaranty

provides for the Guarantor to pay interest in addition to unpaid rent but does not include a

provision regarding the amount of interest due. [*See generally* ECF No. 33-1].[1] CSOG argues

that the Guaranty should be read independently of the Lease and, because the Guaranty did not

list an interest rate, the statutory rate should apply. [ECF No. 63]. In response, HRB contends

that the Lease and the Guaranty must be read together, and that the interest rate listed in the

Lease should apply to the Guaranty. [ECF No. 64]. The Court agrees with HRB.

CSOG argues that because the Guaranty does not reference the interest rate specified in

the Lease, and because no rate is listed, the parties are bound to use the statutory interest rate set

by state and federal law. It cites two provisions of the Guaranty in support of its argument.

First, the Guaranty states: "The liability of the undersigned hereunder shall be so limited [to the

$250,000 rent cap], but shall also and in addition include interest, costs, expenses and attorneys'

fees *described herein*." *Id.* at § 1 (emphasis added). A second provision states: "Although this

Guaranty is related to the Lease as stated above, the obligations of this Guaranty are separate and

independent of the obligations under the Lease, and shall survive any termination of the Lease . .

. ." *Id.* at § 6. Based on these two provisions, CSOG argues that the parties never intended for

the interest rate listed in the Lease to apply to the Guaranty.

HRB asserts the opposite, arguing that the parties did in fact intend for the Lease interest

rate to apply to the Guaranty. It points out that the Guaranty begins: "WHEREAS, to induce

[HRB] to fund some of the cost of Tenant Improvements to the leased premises, the Guarantor

has agreed with [the Tenant] and [HRB] to guarantee the payment of rent, additional rent, *and*

*other sums payable under the Lease*, up to a maximum of $250,000.00 of rent and additional rent

---

[1] The Court cites the Guaranty attached to a previous motion because the copy of the Guaranty attached to defendant's most recent motion is missing its third page. [*See* ECF No. 63-1]

pursuant to the provisions hereof." *Id.* at 1 (emphasis added).  According to HRB, this language

sets forth the parties' intention to make the guarantor responsible for the same payments the

tenant owes under the Lease.  HRB adds that the provision making the obligations of the

Guaranty "separate and independent of the obligations under the Lease" simply means that the

guarantor may be sued directly on the Guaranty.

The Court finds another provision also to be helpful in resolving this dispute.  The Lease

itself references the Guaranty, stating: "As additional consideration for, and as a condition of,

Landlord's entry into this Lease, Colorado Springs Orthopaedic [*sic*] Group, LLC has executed a

Guaranty in the form attached hereto as Exhibit 'G'.  Each and every exhibit attached to this

Lease is incorporated into this Lease by reference, and constitutes a part of this Lease."  [ECF

No. 44-1 at § 47].

## ANALYSIS

"Interpretation of a written contract and the determination of whether a provision in the

contract is ambiguous are questions of law. . . ."  *Fibreglas Fabricators, Inc. v. Kylberg*, 799

P.2d 371, 374 (Colo. 1990).  "The primary goal of contract interpretation is to determine and

give effect to the intent of the parties."  *Ad Two, Inc. v. City and Cnty. of Denver ex rel. Manager

of Aviation*, 9 P.3d 373, 376 (Colo. 2000) (en banc).  The starting point for any search for the

intent of the parties should be the plain language of the contract.  *Id.*; *see also East Ridge of Fort

Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005); *Union Rural

Elec. Ass'n v. Pub. Utilities Comm'n*, 661 P.2d 247, 251 (Colo. 1983); *Radiology Prof'l Corp. v.

Trinidad Area Health Ass'n*, 577 P.2d 748, 750 (Colo. 1978).  Courts must construe the contract

as a whole without viewing individual clauses in isolation.  *Level 3 Commc'ns, LLC v. Liebert

Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).

The Court concludes that the Guaranty constitutes a part of the Lease, and that therefore the two must be read together.  The provision stating that the obligations of the Guaranty are separate and independent of the obligations under the Lease merely signals an independent covenant to uphold the provisions of the Guaranty.  It does not enfeeble the language of the Lease, which explicitly incorporates the Guaranty and makes it a "part of the Lease."  Further, the Guaranty itself includes an introductory provision stating that its purpose is to guarantee the payment of "rent, additional rent, and other sums payable under the Lease."  The interest owed on late rent payments constitutes another sum payable under the Lease.  CSOG has not explained how this provision, which introduces the terms of the Guaranty, is limited or altered by other sections of the Guaranty, or how it tolerates the argument that the Guaranty be read independently of the Lease.  Reading the contract as a whole—the Lease alongside the Guaranty—the Court finds that the plain language indicates that the interest on late payments was to accrue at 24% per annum.

## ORDER

The Court accepts and adopts the stipulations contained in the Stipulated Petition for Interest, Costs, Expenses and Attorney Fees [ECF No. 60] and amends its final judgment accordingly.  It further concludes that the applicable rate of interest on the guaranteed rent payments is 24% per annum and amends its final judgment to include this conclusion as well. The Clerk will prepare a form of Amended Final Judgment consistent with this order.

DATED this 9th day of May, 2014.

BY THE COURT:

*[signature]*

4

_____
R. Brooke Jackson
United States District Judge